HINES v. JOHNSON.

Opinion delivered November 1, 1920.

1. RAILROADS—NEGLIGENCE—QUESTION FOR JURY.—In an action for negligence in operating a train resulting in the killing of a child on a trestle, near a crossing, in view of a conflict in the evidence as to whether the engineer could have seen the child in time to stop the train before striking it, a peremptory instruction for defendant was properly refused.

2. RAILROADS—NEGLIGENCE—FAILURE TO SIGNAL.—In such case an instruction that it constituted negligence on the part of the railroad if it failed to signal at a crossing was not erroneous where there was evidence tending to show that the failure to ring the bell or sound the whistle was the proximate cause of the injury; the statute being intended to afford protection to any one at or near a road or street crossing, whether a traveler upon the highway or street or not.

3. EVIDENCE—EXCLAMATION INDICATING SUFFERING.—In an action against a railroad for the killing of a child, evidence of an exclamation by the child, indicating suffering, made shortly after being struck, was admissible as a spontaneous utterance resulting from the pain incident to the injury and clearly admissible as tending to establish the issue of conscious suffering.

4. TRIAL—INSTRUCTIONS PRESENTING CONFLICTING THEORIES.—Where, in an action for the killing of a child by a train, there were two theories, plaintiff's being that the child was injured by a moving train when, if the trainmen had kept a lookout, the injury could have been avoided; defendant's being that the child was injured by running against a box-car near the middle of the train, which could not have been prevented by keeping a lookout, an instruction which presented the plaintiff's theory was not erroneous where the court also in another instruction presented defendant's theory.

5. RAILROADS—INSTRUCTIONS ON LOOKOUT AND WARNING STATUTES.—
It was not error, in an action for the killing of a child by a train,
to instruct the jury on both the lookout and the warning stat-
ute, since both may have proximately contributed to the injury.

6. DEATH OF CHILD—DAMAGES.—Where damages are claimed for the
death of a child incapable of earning anything or rendering serv-
ices of any value, the value of its probable future services to the
parent during its minority is a matter of conjecture, and may
be determined by the jury without the testimony of witnesses.

7. DEATH—NEXT OF KIN OF CHILD.—In an action for the killing of a
child, the surviving father being the next of kin and the person
in whose behalf recovery may be had, it was error to instruct
the jury that the mother might recover for loss of the child's
services during minority.

Appeal from Benton Circuit Court; *W. A. Dickson,*
Judge; reversed.

*James B. McDonough,* for appellant.

1. The court should have directed a verdict for ap-
pellant. 129 Ark. 77; 215 S. W. 589; 124 Ark. 523. The
Kansas City Southern Railway Company was not oper-
ating the road at the time of the injury. Under the Fed-
eral Control Act of Congress, March 21, 1918, and the
Transportation Act of 1920, the railroad company was
not liable at all. The deceased was a trespasser although
a child of seven years. 66 Ark. 495. The presence of
the rail on the track was not the proximate cause of the
injury, 62 N. E. 265, nor was the failure to whistle for
the crossing the proximate cause. Neither the presence
of the rail nor failure to whistle could as matter of law
be the proximate cause. 84 Ark. 270; 36 *Id.* 371; 108
*Id.* 326; 130 *Id.* 585; Thompson on Neg., § 3774. Labatt,
Master & S., §§ 1041-2; 169 Pac. 1111. This error went
throughout the case and was found in the instructions.
The evidence is insufficient to show that if a proper look-
out had been kept the operators of the train could have
discovered the perilous position of the deceased. 129
Ark. 77 and cases cited. The rule in that case applies
here, and has not been changed or modified by the Legis-
lature or this court.

2. The evidence is full of contradictions, and the verdict is not sustained by the evidence. The burden was on plaintiff to show that the engineer was where a proper lookout would have discovered the danger. The verdict is against the preponderance of the evidence. 126 Ark. 427; 133 *Id.* 166; 136 *Id.* 45; 34 *Id.* 498.

3. The court erred in giving instruction No. 1 on the lookout statute. The facts did not warrant the reading of the statute. 116 Ark. 514; 213 S. W. 369, and further, deceased was a trespasser. 129 Ark. 77.

4. It was error to give instruction No. 4. 108 Ark. 326; 36 *Id.* 371.

5. The instruction on the measure of damages was erroneous. *St. L., I. M. & S. Ry. Co.* v. *Yocum,* 34 Ark. 493; 63 Miss. 509; 93 *Id.* 183.

6. It was error to give instruction No. 1. Cases *supra.*

7. Instruction No. 2 is in conflict with our lookout statute.

8. The court should have given the instruction, ''If deceased was not struck by the engine the jury should find for defendant.''

9. The verdict is excessive. 79 Ark. 179; 67 *Id.* 377.

10. There was error in admitting the statements of deceased. 61 Ark. 52.

11. It was error to admit the statements of the mother and other witnesses as to the pathway.

12. Evidence as to the expectancy of the life of the mother was inadmissible.

*Rice & Rice* and *J. W. Nance,* for appellee.

1. The verdict is sustained by the weight of the evidence and there is no error in the instructions. The cases cited by appellant do not sustain his contentions. 126 Ark. 435; *Ib.* 438. Courts have large discretion in the matter of granting new trials, and unless this discretion is abused the appellate court will not disturb the verdict. 98 Ark. 310.

The railroad was not sued, but the Director General Hines only.   216 S. W. 3.

It is wholly immaterial how the boy came to be on the track, and whether he stubbed his toe and fell with his forehead on the railing and lay there stunned or whether he voluntarily stepped upon the track and stood there.   It is immaterial how he got there under the lookout statute and our decisions.   108 Ark. 326; 93 *Id.* 457.

2.   There was no error in admitting as evidence the call of the boy for his mamma.   80 Ark. 258; 61 *Id.* 52.

3.   There was no error in the instruction on the alarm statute.   53 Ark. 201.   All the instructions were fair and stated the law as a whole.   93 Ark. 189.

4.   There was proof of the value of the services of deceased, Charley Johnson, might render during his minority.   39 Ark. 491.   Where one is injured by a train, the *prima facie* presumption arises that the railroad company was negligent.   103 Ark. 374; 80 *Id.* 19.

5.   There was no error in reading the lookout statute to the jury, 116 Ark. 514, nor in the instruction as to the value of the services of the boy to the father or mother during expectancy of life of the boy or until his majority.   105 Ark. 347; 113 *Id.* 382.   The verdict was not excessive, but, in view of the pain and suffering, very moderate.

HUMPHREYS, J.   Appellee, Ethel Johnson, administratrix of the estate of Charles M. Johnson, deceased, in her representative capacity, instituted suit against appellant, Walker D. Hines, as Director General of the Kansas City Southern Railroad Company, in the Benton Circuit Court, to recover damages in the sum of $3,000, on account of the alleged negligent killing of Charles M. Johnson, a child seven years of age, in the operation of its freight train near the depot at Sulphur Springs in said county, on the 15th day of March, 1918.   The negligence charged, and upon which the cause was sent to the jury, consisted in the failure of appellant's servants to keep a proper lookout and to ring the bell and sound the

whistle for a road crossing north of the place where the injury occurred.

Appellant filed answer, denying negligence on the part of its servants in connection with the injury inflicted, which resulted in the death of the child.

The trial resulted in a verdict and judgment in favor of appellee for $1,500, from which judgment an appeal has been duly prosecuted to this court.

The child was injured by a freight train operated by the Director General of the Kansas City Southern Railway Company, on a trestle or bridge across a ravine, about one-half mile south of the depot at Sulphur Springs. The trestle was about 70 feet long, and there was a walkway three feet west of the west rail of the track. A hand rail was erected on the west side of the walkway. This walkway was built for employees of the railroad to walk across the trestle for the purpose of opening and closing a switch a short distance north of the trestle when trains were directed to take the side track. The road crossing over the railroad track is 200 yards north of the bridge. The railroad track south of the bridge is straight for a mile. The walkway is three feet wide. It was used by a number of people residing in Dickey Heights, an addition to Sulphur Springs, in going to and coming from town. It was not, however, a public passway. Appellee resided 200 yards west of the bridge in a house situated on higher ground than the railroad track. There was no obstruction between the house and the trestle. One standing on the back porch of the house had a plain view of the bridge. A short time before the injury occurred, the child, in company with an older brother and some neighboring children, without the knowledge of appellee, went down to the bridge for the purpose of watering stock in the stream spanned by the bridge. According to the evidence, in its most favorable light to appellee, this child wandered on the walkway of the bridge, and, in running toward the north, stubbed its toe on a nail near the east side of the walkway and fell in a northeasterly direction toward the track, across the west rail, and was held there by the

nail, which had stuck in the heel of its shoe. Appellee and her daughter were standing on their back porch, and the older brother on the west, near the walkway on the bridge, and observed the child as it ran and fell, at which time the train was about 200 yards to the south of the bridge. The three testified that the train came on at a rapid speed, and, while the child was struggling to get up, the engine ran over and severed the child's left arm, near the shoulder, from its body, and, that, as the train passed on, it was struck in the back of the head by a box car. Appellee testified that when she reached the bridge, the child was crying "Oh, mamma! oh, mamma!; that it died within an hour. Appellant objected to the admission of the exclamation "Oh, mamma! oh, mamma!" and preserved the exception in its motion for new trial.

Appellant's testimony was to the effect that the train was being pulled by two engines, and, before reaching the south end of the bridge, stopped, where the first engine was detached and proceeded down the main track so that the second engine could take the train on to the side track just north of the bridge; that, as the train approached the bridge, the bell was ringing and whistle blowing for the road crossing north of the bridge, and that a lookout was being kept by the engineer and fireman; that the bridge was within the vision of the engineer and fireman 200 yards or more south of the bridge and that no child was on the bridge as the train approached; that the only physical evidence that the train struck the child was the fact that blood was on one of the box cars midway the train; that the engines did not run over the child and had no blood about them. They were corroborated in the main in their evidence by the neighboring children, in whose company Charles M. Johnson went to water the stock.

At the conclusion of the evidence, appellant requested that the court direct a verdict in its favor, the refusal of which is assigned as reversible error. The contention is made that the evidence, construed in its most favorable light to appellee, failed to show that the

engineer operating the train, by keeping a lookout, could have seen the boy on or so near the track as to be in a place of danger. Appellee and her daughter both testified that they could see the child plainly on the walkway while standing 200 yards to the west of the porch. The track was straight to the south, and there was no obstruction between the incoming train and the bridge. There was evidence tending to show that when the child was running along the walkway, the train was 200 yards south of the bridge. If the mother and sister could see the child on the bridge from a point 200 yards west of it, we see no reason why the trainmen, if keeping the proper lookout, could not have seen the child from the same distance south of the bridge. In fact, the trainmen admit that they could see the bridge as the train approached and testified that no child was on the walkway. No contention is made that, had they discovered the child, it was impossible to stop the train and prevent the killing within that distance. In fact, the trainmen claim to have stopped the train near the south end of the bridge before going upon it. We think the evidence reveals the fact that, if the child were running along the walkway, as appellee's evidence shows, the trainmen could, by proper lookout, have discovered it at a distance of 200 yards. It is suggested, however, that, if the child were seen on the walkway, it was not in a perilous situation, but was in a safe place, and therefore it was not incumbent upon the trainmen to make an effort to stop the train. The east side of the walkway was within three feet of the west rail of the track, and we think a child of tender years running in that close proximity to the railroad track must have been regarded as in a perilous position by any one who observed it. The contention is also made that it was error to refuse the peremptory instruction requested by appellant because the physical facts contradict the theory of the killing by appellee. In support of this contention, it is said that it was impossible for the child to have fallen on or across the west rail of the track, so that it could have been in-

jured by the engine, if its foot hung on the nail. Appellant's construction of the evidence is that the nail, upon which the foot of the child hung, was in the middle of the walkway, and was therefore at least five feet from the west rail of the track; that the child was only three feet long and could not therefore have fallen a distance of five feet if held by the nail. It is true appellee testified that she thought the nail was in the middle of the walkway, but her daughter, Miss Mamie Wilson, testified that she thought it was on the east side of the walkway. If this were the correct location of the nail, the child's head could have reached the rail in falling. After a careful reading of the evidence, we are convinced the physical facts developed in the case do not conflict with the theory upon which appellee recovered judgment. The court did not err in refusing to give the peremptory instruction asked by appellant.

Again, it is insisted that the court erred in submitting the case to the jury upon the theory that it was negligence to permit the nail, on which the boy stubbed his toe, to protrude from the walkway, for the reason that the boy was a trespasser, and no duty rested upon appellant to protect a trespasser from protruding nails in the walkway. It is true negligence in this regard was alleged and proved, but it was not submitted to the jury. The instructions make no reference to negligence on account of a protruding nail.

Again, it is insisted that a failure to ring the bell or sound the whistle for the road crossing as the train approached the bridge could not have been the proximate cause of the injury; hence, it was error to submit the case to the jury upon the theory that it constituted negligence on the part of appellant if it failed to ring the bell or sound the whistle as its train approached the crossing. This contention is made upon the theory that if the child had discovered the train 200 yards away and was running from it, as testified to by appellee's witnesses, the lack of a warning did not cause the injury. There might be some force in this contention if the child

really knew the train was approaching. We can only surmise that such was the case from the fact that the child was seen running in front of and in the same direction the train was approaching, and the fact that the child's brother had hallooed to him that the train was coming. There is no positive evidence that the child had seen the train or that he heard his brother's call. If the child had not seen the train or heard his brother call, the ringing of the bell and blowing of the whistle might have caused him to turn back or to one side before the arrival of the train. Again, there was other evidence in the case tending to show that the failure to ring the bell or sound the whistle could have been the proximate cause of the injury. The evidence of appellant was to the effect that the train was stopped, or practically so, a short distance south of the bridge. If this were so, the ringing of the bell and blowing of the whistle when the train started would have apprised the child of its approach, and the failure to give the statutory warning may have been the direct cause of the injury, for, had the child heard the warning, it might in some way have avoided being injured. But it is suggested that the statutory requirement to blow the whistle or ring the bell for 80 rods as the train approaches a road crossing is for the sole benefit of the traveling public using the highway at or near the crossing, and that, since the child was not a traveler on the highway, at or near the crossing, as a matter of law the failure to ring the bell or sound the whistle could not have been the proximate cause of the injury. There is nothing in section 6595 of Kirby's Digest, which is the warning statute referred to, limiting the right to recover for injuries inflicted at or near road crossings, to travelers upon the highway. The language of the statute is broad and renders a railroad company liable for all damages which shall be sustained by any person by reason of a failure to ring the bell or blow the whistle of the engine for 80 rods as it approaches a road or street crossing. In construing the statute in the case of *St. L., I. M. & S. Ry. Co.* v. *Hendricks*, 53 Ark.

201, this court said: "This statute evidently intends that signals shall be given near public crossings for any purpose which they might naturally or reasonably subserve." These signals were intended to afford protection to any one at or near a road or street crossing, whether a traveler upon the highway or street or not.

It is insisted that the court erred in permitting the mother to testify to the exclamation of the child "Oh, mamma! oh, mamma!" a short time after the injury was received. This evidence, as detailed by the mother, shows that the outcry of the child, as the mother approached, was an exclamation evidencing pain and suffering, which was an issue in the case. It was a spontaneous utterance resulting from the pain incident to the injury, and clearly admissible as tending to establish the issue of suffering.

It is insisted that the court erred in giving instruction No. 1, because, under the facts in the case, there were two theories, one to the effect that the child was injured by a moving train, which injury could have been prevented had an employee of the railroad kept a constant lookout; the other that the child was injured by running against a box car near the middle of the train, which could not have been prevented by an employee keeping a constant lookout. The instruction complained of was the "lookout statute" which was read to the jury without explanation as to the theory upon which it was given. It is contended that the instruction excluded appellant's theory and evidence to the effect that the train stopped near the south end of the bridge and that the child did not come upon the bridge until after the engines had started up and passed the place where the injury occurred. It is true the instruction applied to the train when in motion and covered appellee's theory of the case, but the giving thereof did not exclude appellant's evidence to the effect that the train stopped south of the bridge and its theory that the child ran against a box car and received the injury after the engines had passed the place where the injury occurred, for appellant's theory was covered and presented in the follow-

ing instruction: ''If the train stopped at the south end of the bridge, and if, after the engines had passed the bridge, the deceased climbed on the bridge, and if, by playing with the moving cars or otherwise, the deceased was knocked down by a car and run over and killed, and if his peril was unknown to the trainmen, the jury should find for the defendant (appellant).'' There was no conflict in the instructions, as they covered different theories of the case.

It is insisted that the court erred in instructing the jury upon both the lookout and warning statutes; that both a failure to keep the lookout and the failure to ring the bell or blow the whistle could not contribute to the injury, and therefore both could not be the proximate cause of the injury. We see no inconsistency in the allegations of negligence nor any good reason why the failure to comply with the law in all these respects might not have contributed to or might not have been the proximate cause of the injury. If the bell had been rung and the whistle blown, the child might have discovered the approach of the train and have either turned back or stopped and avoided the injury; but, in case it had not done so, if a constant lookout had been kept and the perilous position of the child discovered, the train might have been stopped in time to prevent the injury. So the failure to comply with either or both of the statutory requirements may have been the proximate cause of the injury.

It is insisted by appellant that the cause should be reversed because there was no proof of the value of the services which the deceased, Charles Johnson, was rendering or might render during his minority. It was said by Mr. Chief Justice ENGLISH, in the case of *Little Rock & Fort Smith Ry. Co.* v. *Barker,* 39 Ark. 491, that ''where damages are claimed for the death of a child incapable of earning anything, or rendering services of any value, the value of its probable future services to the parent during its minority is a matter of conjecture, and may be determined by the jury without the testimony of witnesses.''

It is insisted that the court erred in instructing the jury that if the child was killed through the negligence of appellant, appellee, as mother, was entitled to recover for the loss of the child's services during its minority. The evidence disclosed that the father was living and had an expectancy of 7.55 years. Section 6290 of Kirby's Digest, creating the right of action, provides that "The amount recovered shall be for the exclusive benefit of the widow and next of kin of such deceased person." Under our statute of descents and distributions, where deceased leaves no widow and children, the whole estate descends, first, to the father. Section 6290 of Kirby's Digest was under construction in the case of *Kansas City Southern Ry. Co.* v. *Frost,* 93 Ark. 183, and Mr. Justice BATTLE, in rendering the opinion of the court, said: "The amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and they are such as can take as distributees of the estate under the laws of descent and distribution." Therefore, the next of kin referred to in the statute necessarily means the person or persons who inherit immediately upon the death of the deceased, and that person in the instant case was the father. The mother could not be regarded as the next of kin because she could not inherit under the statute of descent and distribution unless the father had been dead at the time of the death of the child. Under similar statutes, in Nebraska and Minnesota, to section 6290 of Kirby's Digest, creating the right of recovery for the benefit of the next of kin against one negligently killed, the next of kin of the deceased was held by the Circuit Court of Appeals of the United States to be the father, if living, to the exclusion of the mother. *Thompson* v. *Chicago & St. Louis Ry. Co.,* 104 Fed. 845; *Swift & Co.* v. *Johnson,* 138 Fed. 867. As the father was living when the child was killed, the court erred in telling the jury that appellee, as mother, might recover for the loss of services of deceased during his minority, if negligently killed by appellant. There is no way, however, to determine from the record how much was erroneously

awarded to appellee, as mother, on account of loss of services of the deceased. The verdict was rendered in gross.

On account of the error indicated, the judgment is reversed and the cause remanded for a new trial.