HINES *v.* BETTS.

Opinion delivered December 20, 1920.

1. RAILROADS—DUTY OF PEDESTRIAN AT CROSSING.—There is no absolute rule in this State that a failure of a traveler to stop, look and listen at a public crossing is negligence as matter of law, making it obligatory on the courts to take the question of contributory negligence from the jury.

2. APPEAL AND ERROR—REVIEW OF DENIAL OF DIRECTED VERDICT.—In considering whether the court should have directed a verdict for the defendant, every fact and inference of fact favorable to the plaintiffs which the jury might believe to be true must be accepted as true, and every fact unfavorable to the plaintiffs which the jury might reject as untrue must be rejected.

3. RAILROADS — CONTRIBUTORY NEGLIGENCE — JURY QUESTION.—In an action for the death of a pedestrian struck by a train at a public crossing, his contributory negligence in entering on the track without stopping to look and listen, when there was a strong wind blowing and snow falling and the train was running at an unusual speed without signals, *held* a question for the jury.

4. RAIROADS—DISCOVERED PERIL—JURY QUESTION.—In an action for the killing of a pedestrian by a train at a crossing, where the trainmen discovered deceased's perilous situation and applied the emergency brake but did not blow the whistle or sound the bell, and deceased was struck when he was almost across the track, the question of discovered peril was properly submitted to the jury.

5. DEATH—DAMAGES FOR PAIN AND SUFFERING.—The widow and children of one negligently killed are not entitled to damages for his pain and suffering, but only to damages for the loss of his comfort and support.

6. APPEAL AND ERROR—HARMLESS ERROR.—In an action by a widow and children for the death of their husband and father, an instruction authorizing recovery of damages for deceased's pain and suffering was prejudicial; there being no method of determining how much the jury awarded for this element of damage.

Appeal from Greene Circuit Court, First Division; *R. H. Dudley,* Judge; reversed.

Mrs. Tommy Betts for herself, and as next friend of her minor children, sued Walker D. Hines, as Director General of Railroads, to recover damages for the alleged

negligent killing of her husband, who was run over and killed by a passenger train of the railroad company.

The material facts are as follows: Andy M. Betts was struck and killed by a passenger train of the St. Louis & San Francisco Railroad Company as he was walking across Main Street in the city of Blytheville, Ark., about 5:45 o'clock in the afternoon on the 8th day of February, 1919. Main Street in the city of Blythe-ville runs east and west, and upon it are located nearly all of the stores or business houses. It is eighty feet wide between the building lines and the main line of the St. Louis & San Francisco Railroad Company runs north and south across it near the center of the business sec-tion. The right-of-way of the railroad company is 100 feet wide. The main line and one side track crosses Main Street. The railroad tracks are five feet wide and the space between them is nine feet. There is a good deal of crossing of the railroad track on Main Street. On the west side of the main track of the railroad company, and on the north side of Main Street, there is a stationary electric bell or gong for the purpose of warning the pub-lic of the approach of trains. A passenger train from St. Louis to Memphis is scheduled to arrive at the station at Blytheville at 5:45 p. m. The passenger depot is a short distance south of Main Street on the west side of the main track of the railroad. On the 8th day of Feb-ruary, 1919, at about 5:45 o'clock in the afternoon there was a strong wind blowing and a heavy snow falling which had covered the ground in the city of Blytheville. Andy M. Betts, a farmer, who lived in the country, was in the city of Blytheville on that afternoon and started along the sidewalk on the soutuh side of Main Street to cross the railroad track. He was forty-five years of age at the time, and was a strong, able-bodied man. There was a string of cars on the sidetrack which obstructed his view to the north until he crossed the sidetrack. These box cars were on the sidetrack from ten to eighteen feet north of the north line of Main Street. Betts continued

to walk across the main track after he crossed the side-track. According to those who saw the accident, he either was walking fast or was going in a jog trot. He was struck by the train after he had got nearly across the main track. The train was coming in from the north and one witness testified that Betts stopped a moment just before he stepped upon the main track.

The speed of the train as it approached the crossing on Main Street is variously fixed by the witnesses at from ten to thirty miles per hour. The witnesses also differed as to the distance that a train on the main line could have been seen by any one approaching the main track along the path traveled by Mr. Betts on the day in question. Several persons crossed the railroad track in advance of Mr. Betts, and one of them had got across the track just ahead of him. He saw the headlight of the approaching train as he crossed over. Some of the witnesses said that the train whistled some distance north of the Main Street crossing, but that they did not hear it whistle any more nor did they hear the bell ring as the train approached the crossing. Other witnesses testified that they did not hear the electric bell ring as the train approached the Main Street crossing. Most of the witnesses said that the train might have whistled again and they not have heard of it. But some of them said that they did not think it whistled but one time, and that was some distance above the Main Street crossing.

On the part of the railroad company, it was shown that the engineer and fireman were keeping a lookout, and that, as soon as the fireman saw Betts approaching the main track from his side, he signaled the engineer to stop the train and the engineer at once applied the air brake in emergency and did all he could to stop the train at once. It also introduced testimony tending to show that Betts must necessarily have seen the approaching train if he had looked to the north as he attempted to cross the main track.

Other testimony will be stated or referred to in the opinion.

The jury returned a verdict in favor of the plaintiffs in the sum of $10,000, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*W. F. Evans* and *W. J. Orr,* for appellant; *M. P. Huddleston* and *S. R. Simpson,* of counsel.

1. As to pain and suffering the complaint fails to state a cause of action in favor of plaintiffs. Plaintiffs' instruction No. 12 was the only instruction on the measure of damages, and is clearly prejudicial in authorizing the jury to allow plaintiff's damages for pain and suffering of Mr. Betts. Kirby's Digest, § 6287; 53 Ark. 17.

2. The court erred in refusing instruction No. 9 as requested, and in giving it as modified. 125 Ark. 509.

3. Instruction 10, as requested, states the law as to contributory negligence as a defense to negligence in failure to give signals or for excessive speed. 110 Ark. 168. The court destroyed the life of this instruction by the modification. 125 Ark. 509; 110 *Id.* 168. See, also, 35 S. W. 216; 34 *Id.* 545; 93 *Id.* 564; 42 *Id.* 406; 20 *Id.* 161; 54 Ark. 431; 69 *Id.* 134; 64 *Id.* 364.

4. While instruction No. 6 is abstractly correct, it was error to give it in this case. 105 Ark. 299. It was error to refuse to direct a verdict for defendant. The instructions were prejudicial and erroneous.

*Davis, Costen & Harrison,* for appellees.

1. The contention that the complaint failed to state a cause of action for pain and suffering in favor of plaintiffs and that the court's instruction on the measure of damages is raised in this court for the first time. No specific objections were made below. 118 Ark. 1. Only a *general* objection was made below, and they can not specifically object here for the first time. 56 Ark. 602; 123 S. W. 797; 125 *Id.* 136. See, also, 133 *Id.* 1134; 88 Ark. 181, 204; 89 *Id.* 522; 93 *Id.* 589; 96 *Id.* 184; 118 *Id.* 337; 119 *Id.* 530.

2. Appellant was not prejudiced by the instruction. Under the evidence the jury would have been justified in returning a much larger verdict. 92 Ark. 432; 108 *Id*. 14.

3. Appellant's requested instruction No. 9 as modified was more favorable to them than they were entitled to under the facts and circumstances. 136 Ark. 246; *Ib.* 254; 60 *Id*. 409; 63 *Id*. 177; 64 *Id*. 236.

4. Instruction No. 10 was also too favorable to appellant.

5. There was no error in No. 4 given. It is not abstract. 105 Ark. 190. See, also, 94 Ark. 246, 251; 107 *Id*. 431, 438.

6. Instructions 3 and 5 given, correctly state the law. The jury were justified in concluding that the employees were not keeping a proper lookout, if they did not discover Betts until they were upon him.

7. The court properly refused to direct a verdict for defendant. 76 Ark. 227; 79 *Id*. 241. A question for a jury was made by the evidence. 90 *Id*. 19; 105 *Id*. 180; 136 *Id*. 246, 254.

HART, J. (after stating the facts). It is first insisted by counsel for the defendant that the evidence is not sufficient to support the verdict. In support of their contention, they insist that the court should have held as a matter of law that Andy Betts, who was killed, was guilty of contributory negligence in attempting to cross the railroad track at the time the train struck and killed him.

This court has expressly declared that the rule that the failure of a person, when about to cross a railroad track at a public crossing, to stop, look and listen for approaching trains constitutes contributory negligence barring recovery, is not a hard and fast rule under all circumstances. In other words, there is no absolute rule in this State that a failure on the part of the traveler to stop, look and listen at a public crossing is negligence as a matter of law and makes it obligatory upon the court under any and all circumstances to take the question of

contributory negligence from the jury. *C., R. I. & P. Ry. Co.* v. *Batsel,* 100 Ark. 526, and cases cited; *St. L., I. M. & S. Ry. Co.* v. *Roddy,* 110 Ark. 161, and *Smith* v. *Mo. Pac. Rd. Co.,* 138 Ark. 589.

In considering whether or not the court should have directed a verdict for the defendant, every fact and inference of fact favorable to the plaintiffs, which the jury might believe to be true, must be accepted as true; and every fact unfavorable to the plaintiffs which the jury might reject as untrue must be rejected. Tested by this rule, we do not think it can be said, as a matter of law, that Andy Betts was guilty of contributory negligence when he attempted to cross the railroad track on the evening he was killed. He was a farmer living out in the country from Blytheville, and the jury might have found that he was familiar with the schedule of the train and the rate of speed at which it usually approached the Main Street crossing. There was a city ordinance which provided that no railroad engine, train, or car should be moved within the corporate limits of the town of Blytheville at a greater speed than six miles per hour.

The fireman testified that the train was going at the rate of fifteen miles an hour when he first saw Betts approaching the main track on Main Street, and it is fairly inferable from his testimony that this was the usual speed at which the train approached the Main street crossing.

One of the witnesses testified that Betts was walking fast, and that he stopped after crossing the sidetrack for a moment just before going on to the main track and looked toward the north. Other witnesses say that the train whistled some distance above the Main Street crossing and did not whistle any more after that. The jury might have inferred that Betts, as he looked toward the north, saw the headlight of the approaching train and on account of the snow thought it was approaching at its usual rate of speed, and that he would have plenty of time to cross the track ahead of the train, as did the man just in front of him.

The jury might have also found that if the train had been approaching at a rate of speed not faster than fifteen miles an hour that Betts could have crossed in safety. It was inferable from the testimony that the train did not give the statutory signals of its approach by ringing the bell or sounding the whistle. This might have deceived Betts into thinking that the train was farther away than it really was. Then, too, as just stated, the condition of the atmosphere might have deceived him as above stated as to the rate of speed at which the train was approaching. Some of the witnesses said that the train was running at a speed of thirty miles per hour. The jury had a right to take into consideration all these facts in reaching its verdict. When it has done so, we do not think that it should be conclusively said that under all facts and circumstances adduced in evidence Betts was guilty of contributory negligence.

It is also contended by counsel for the defendant that the court erred in submitting to the jury the question of discovered peril. They point to the fact that the engineer and fireman both testified that Betts approached the track from the fireman's side, and that the fireman signaled the engineer to stop the train as soon as he discovered that Betts was about to attempt to cross the main track in front of it, and that the engineer immediately applied the air brake in emergency and did all that he could to stop the train. Their testimony in this respect is corroborated by the evidence of other witnesses.

It can not be said, however, that the undisputed evidence warranted the court in taking away from the jury the question of discovered peril. Betts had nearly crossed the track before the train struck him. According to some of the witnesses, he was going at a fast walk. The jury might have found that if the engineer had blown a sharp blast of the whistle this would have attracted Bett's attention to the nearness of the approaching train, and that he might have accelerated his speed or have jumped from the track to a place of safety. The failure

of the engineer to give the danger signals was sufficient to submit to the jury the question of the negligence of the defendant with respect to the doctrine of discovered peril. *Evans* v. *St. L., I. M. & S. Ry. Co.*, 87 Ark. 628, and *St. L., I. M. & S. Ry. Co.* v. *Evans*, 96 Ark. 547.

It is next contended that the court erred in its instruction on the measure of damages. In this instruction the plaintiffs are allowed to recover for the financial loss to the widow and children by reason of Betts' being struck and killed by the railroad train. The instruction also permits the jury to find for the plaintiffs for the conscious pain and suffering, if any, suffered by the decedent by reason of the injury. This was the only instruction on the measure of damages, and it clearly authorized the jury to allow the widow and children damages for the conscious pain and suffering of Andy Betts. This was wrong. The widow and minor children were only entitled to sue for damages which they sustained by reason of the death of the husband and father, and this was the financial loss to them of his comfort and support. They could not sue for damages for the conscious pain and suffering of decedent. Such suits must be brought, under our statute, by the personal representative of such deceased person. Kirby's Digest, §§ 6289-6290.

It is contended by counsel for the plaintiffs, however, that no prejudice resulted to the defendant from this instruction. They point to the fact that the evidence was sufficient to show that their financial loss was more than $10,000, the whole amount recovered. There was a general verdict for the plaintiffs in the sum of $10,000. The instruction submitted to the jury the amount to be recovered for conscious pain and suffering and also for the financial loss to the widow and children. Although Betts died in a short time, there was testimony from which the jury might have found that he endured conscious pain and suffering before his death. This court cannot know how much damages the jury intended to find, if any, for the conscious pain and suffering and how much for the financial loss for the widow and chil-

dren. Therefore, the instruction was erroneous in submitting to the jury an element of damages which the plaintiffs were not entitled to recover, and this was prejudicial to the rights of the defendant.

In the case of *Hines* v. *Johnson,* 145 Ark. 592, the court held that, in the case of the death of a child leaving both a father and mother living, the right of recovery of damages for the negligent killing of such child was, under our statute, in the father and not in the mother. Therefore, in an action brought by the mother in such a case, it was held error to instruct the jury that she might recover for the lost services of the deceased child. The reasoning of the court in that case applies here, and the judgment must be reversed because the verdict was general and there is no way for the court to determine from the record how much was erroneously awarded the plaintiffs on account of conscious pain and suffering endured by the husband and father before his death.

It follows that the judgment must be reversed and the cause remanded for a new trial.