MISSOURI PACIFIC TRANSPORTATION COMPANY *v.* TALLEY.

4-5706 136 S. W. 2d 688

Opinion delivered January 22, 1940.

R. S. *Wilson, House, Moses & Holmes* and *Eugene R. Warren,* for appellant.

*Partain & Agee* and *J. B. Dodds,* for appellee.

MEHAFFY, J. This action was instituted in the Crawford circuit court by Chester Talley, appellee, against the Missouri Pacific Transportation Company, appellant. The appellee alleged that he was injured by reason of the negligence and carelessness of G. E. Miller, driver of the bus for the transportation company, and alleges several acts of negligence; alleges that as a result of the negligence of the appellant, he was injured, describes his injuries, and prays for judgment in the sum of $3,000.

The appellant filed answer alleging that the appellee had filed an action on May 27, 1938, against the appellant for the same cause of action as set forth in this complaint; that said cause was removed to the United States District Court, and thereafter took a non-suit; that thereafter appellee filed another suit upon the same cause of action, and that this second suit was removed to the United States District Court, and thereafter, on January 7, 1939, the appellee again voluntarily dismissed his cause of action in the Federal court. Further answering, the appellant alleged that the dismissal of said cause of action operated as an adjudication upon the merits of appellee's cause of action and appellant pleads said dismissal as a full and complete bar to appellee's action, and that the same is *res judicata.* Further answering, the appellant denied each and every allegation of appellee's complaint, except that it is a Delaware corporation operating a bus line in the state of Arkansas, and that one of its buses was struck by an automobile driven by Flay Shipp at the time and place alleged in the complaint, and that if appellee was injured, as alleged, his injuries were the direct result of his own negligence and

that of the driver of the automobile in which he was riding at the time, and that such negligence was the sole and proximate cause of any injuries which the appellee may have sustained, and pleads contributory negligence of the appellee as a bar to recovery.

Dr. Hugh O. Turrentine testified in substance that he lives in North Little Rock, is a graduate of the Kansas City College of Medicine & Surgery and specialized in eye, ear, nose and throat at the Chicago Polytechnic Clinic; had two years and 11 months in the Hospital for Nervous Diseases, and six months at the University of Berlin and University of Vienna; treated Chester Talley on November 17, 1937; found an edema of right upper and lower lid. He then describes specifically the injury to the eye and said if the abrasions got well, it would leave scar tissue and impair the vision, and that the condition of the eye was permanent; that the impairment is fifty per cent; he was injured on the 13th and witness saw him on the 17th.

Dr. W. R. Richardson testified that he is a graduate of Vanderbilt University, post-graduate of Tulane University, and has been practicing since 1921; examined Chester Talley on December 10th, about three weeks after his injury; found his right leg blazed and could not flex the nerve of the thigh; complained of tenderness in the lower part of lumbar region; found partial paralysis of right leg, with some atrophy; the cause of the partial paralysis is an injury somewhere along the lumbar vertebrae and the atrophy is caused by an injured nerve; he may improve some, but it will be permanent to a certain extent; did not treat appellee, merely examined him.

Bill Shipp testified that he is 17 years old, lives at Lonoke, was riding in the car driven by his brother on November 13, 1937, when a collision occurred with a Missouri Pacific bus at Third & Locust streets, in North Little Rock; the automobile in which witness was riding was going east, and when they entered the intersection at Locust street, attempted to turn north; they had been

to Levy and met the other boys at the foot of the bridge; had just come from the curb market and had had nothing to drink; if any of the other men had, he did not know about it; witness' brother was not drinking; Talley did not appear to be drinking; they entered the intersection, and driver threw out his hand to turn, shifted gears; the car jumped a time or two; saw the bus coming and figured they had time to make it, and the bus hit the automobile; saw the bus about a block away when they were making the turn; were just entering Locust street when the bus hit the automobile on the north side of Third street; bus traveled about 50 feet before it stopped; the car witness was in was going about 15 miles an hour; has been riding in automobiles practically all of his life and is familiar with the speed of automobiles; has driven automobiles; the bus was going about 40 miles an hour; they came from Lonoke and got to North Little Rock about 6 o'clock; it was dark; Chester Talley, Clarence Licty and witness' brother were in the car; the accident occurred about 11 o'clock; they were at the curb market about a half an hour; nobody drank any beer or soda water; witness saw no liquor at all; did not know anybody had any liquor; Clarence told him later that they did; did not know that his brother was fined for reckless driving; thought the judge forfeited his brother's bond; his brother was knocked unconscious in the accident; had been driving ten or fifteen miles an hour; the wreck happened in Pulaski county; his brother was driving on the right side of the street and witness was watching; they were going east and the bus was coming west; the collision took place about five feet before they got to Locust street.

At this point, appellant introduced exhibits 1, 2, 3, 4 and 5, which were photographs of the place where the accident occurred. Witness was not hurt much in the accident; saw Talley that night and again the next day; did not tell the police anything about who was in the car; saw the police taking measurements; police asked him if he was in the wreck, but did not ask him how it happened; he was looking out when the accident hap-

pened; saw the bus down the street when they started to make the turn; the collision took place on the north side of Third street about 15 or 16 feet east of the electric light pole; the driver entered the intersection before he started to turn; the car was on the south side of the curb turned around after the collision; the bus ran 50 or 75 feet from where the collision happened; the bus was running 40 or 50 miles an hour and ran 40 or 50 feet after it struck the car; the bus is about 30 feet long and weighs about ten times as much as a Chevrolet car; there was a light at the intersection and no obstruction in either street; did not hear Talley make any statements after the accident; did not hear him say anything about being drunk, but he said one of his eyes and one of his legs were hurt.

Flay Shipp, the driver of the automobile, testified in substance that he was driving the automobile that figured in the collision with the Missouri Pacific bus November 13, 1937; Bill Shipp, Chester Talley and Clarence Licty were with him; had been to the curb market and had started to carry Talley home; was fixing to turn north on Locust from Third street when the accident happened; had been going about fifteen or twenty miles an hour, but was then going about five miles an hour; threw out his hand and started to pull in after he reached the intersection; the bus was 75 or 100 yards down Third street; his car jumped when he started changing gears and the bus hit him; judged the speed of the bus to have been about fifty miles an hour; had not had anything to drink; was not tried in the North Little Rock court, were supposed to have had the trial on Monday and he did not go up there so they put it off until Wednesday; they did not try him and the bond was forfeited; witness and Miller were both arrested on a charge of reckless driving; did not have any liquor; did not see any liquor and did not smell any and was not drunk; was not tried for reckless driving; had a lawsuit against the company himself and did not get anything.

There was at this time introduced a transcript of the judgment of the conviction in the case of the *City*

*of North Little Rock* v. *Flay Shipp,* showing witness had been tried for reckless driving and fined $25.

Witness further testified that the accident happened about 11 o'clock; he had been going five to fifteen miles an hour, but would have gone faster when he got out of town; they had been in the cafe a few minutes; there was some drinking in there; knew that under the laws one had to drive on the right side of the street; did not remember anything after the collision for a while; does not remember that the officers testified from the marks of his car that he went down the north side of the street; the only way he had of fixing the speed of the bus is that he was there and the car turned up; also from where the bus was and where he was and the time it was bound to have got there; could have stopped his car in two feet; it would have been no use because he would have been hit any way; does not know when he put his hand out; supposed it was when he saw the bus coming with its lights on; it was 75 or 100 feet away when he saw it; by the time he had gone 10 or 15 feet it had gone 75 or 80 feet; he saw how fast it was going.

R. D. Knight testified that he was a pipe fitter and lived in Little Rock; he was down town at a tourist cafe about 11 o'clock on November 13, 1937; when he came out of the cafe he heard a noise; it was a bus coming up the road; he turned his head and saw a car coming from the west going east; as the car reached the Locust street intersection it turned about halfway into Locust from Third; the bus passed on down where he could not see it or the car any more; they followed on down where it struck the car; in his judgment the bus was traveling 40 or 50 miles an hour; the other car started to turn north into Locust; it was about 100 feet from the cafe to the intersection; he was out in front of the cafe which is not located on the corner, but about the middle of the block; had just stepped out when the bus passed; his car was between him and the bus for an instant; saw the other car turning into Locust and heard the collision.

Mr. Talley, the appellee, testified in substance as follows: He is 22 years of age; was riding in a car

driven by Flay Shipp on the night of November 13, 1937, when a collision occurred with a Missouri Pacific bus at the intersection of Third and Locust streets in North Little Rock; the bus was 75 or 100 yards away when witness first observed it; they started making the turn just as they were entering the intersection; the car was going about five miles an hour; the driver almost stopped; changed gears when the car started jumping; lacked about five feet being at Locust street when the impact occurred; he had had nothing to drink; neither had Flay Shipp; he did not act like a drunk man and he did not smell any on him; has been treated by a physician since the accident; suffered pain, and still does; has had four different doctors; the injury to his left eye affected his eyesight. He was then handed exhibit No. 1, a picture representing the condition witness was in a few days after the accident. His leg gets better and then gets bad again; has not been able to carry on farm work; his eyesight was good beforehand and nothing was wrong with him; could do manual labor and was working for John Frizby at $1.50 a day; has not been able to work since; if he had not been injured he could have continued in the same work; he was bruised all over and could not walk on his foot; his eyes were skinned and swollen; Dr. Mitchell at Lonoke sewed up his eye and face; when he came to himself after the accident he was out of the car; had been unconscious for some time; he hit the pavement and that is where he received the cuts and bruises; has a scar on his left eye; had been to the curb market cafe, but had not been drinking; did not have any liquor on him and did not see the pint bottle of liquor the other boys had; heard it was Clarence that had it; was at the scene of the accident when the officers came up; Francis Jones took him to Lonoke; picked him up at the scene of the accident; the picture that was introduced was made about three days after the accident; has not been in any fights and has not broken up any parties and has not been getting drunk; has carried a cane since the accident; has not been treated by a doctor for any other sort of diseases and has not had gonorrhea; does not drink whiskey; was not drunk after the accident; they carried witness to the side of the pavement,

but he does not recall anything he said that night; this is not the third suit he has brought; does not know anything about the case going to federal court and being dismissed; Flay Shipp was driving 15 or 20 miles an hour before the accident; could not tell how fast the bus was going until he got up to the intersection close to it; Shipp held out his hand. Witness testified that Dr. Mitchell's bill was $25, Dr. Eason's bill was $50, Dr. Turrentine's bill was $150 and Dr. Richardson's bill was $25.

At this point in the trial the appellant renewed its request to the court to declare a mistrial because of the question asked by counsel for plaintiff as to whether any jurors were stockholders or representatives of any liability insurance company. The motion was overruled, and appellant excepted.

Appellant then introduced several witnesses and the evidence of these witnesses was in conflict with the evidence introduced by appellee.

Appellant also offered in evidence the papers in the case of Talley v. Mo. Pac. Trans. Co., including the complaint which alleged the identical cause of action now being tried; the petition and bond and order of removal, and order dismissing the cause showing that plaintiff entered a voluntary non-suit. Appellant also offered in evidence a second case that was removed to the federal court, the cause of action being identical with the one before the court now, and offered in evidence the order of dismissal of the second suit filed.

We do not copy the evidence that is in conflict with the evidence introduced by appellee because it is a settled rule of this court that if there is any substantial evidence to support a verdict, the fact that there is evidence in conflict with it does not justify a reversal.

The late Mr. Justice BUTLER said, in discussing this question: "The verdict must rest on the uncorroborated testimony of the appellee. The question as to where lies the preponderance of the evidence is not for us to say. That is the duty of the trial judge, who, by his refusal to set aside the verdict, has set his seal of approval upon

the truthfulness of the testimony given by the appellee. This conclusion, under settled principles of law, we are forced to adopt. We, therefore, treat the testimony of appellee as true and view it in the light most favorable to him, and if it appears from that testimony that there is substantial evidence to support the verdict, we, too, must approve it." *Missouri Pacific Transportation Co.* v. *Jones,* 197 Ark. 79, 122 S. W. 2d 613; *Norton & Wheeler Stave Co.* v. *Wright,* 194 Ark. 115, 106 S. W. 2d 178.

The late Chief Justice HART, speaking for this court, said: "In considering whether or not the court should have directed a verdict for the defendant, every fact and inference of fact favorable to the plaintiffs, which the jury might believe to be true, must be accepted as true, and every fact unfavorable to the plaintiffs which the jury might reject as untrue must be rejected." *Hines* v. *Betts,* 146 Ark. 555, 226 S. W. 165; *Mo. Pac. Trans. Co.* v. *Jones, supra.*

It is contended, however, that the court erred in refusing to direct a verdict for the appellant because, it says that Bill Shipp filed an action in White county against the bus company and failed to recover, and that this court affirmed the case. The fact that Bill Shipp failed to recover is no reason why the court should have directed a verdict against Talley; and the fact that this case comes from Crawford county and that case came from White county is immaterial. Certainly it could not be claimed that because Bill Shipp lost his suit, the appellee is not entitled to recover. Appellant then cites the case of *Sparks* v. *Chitwood Motor Co.,* 192 Ark. 743, 94 S. W. 2d 359. The facts in that case are wholly different from the facts in this case. As to whether anybody was drinking or was drunk was a question of fact for the jury, and their verdict settles the question. The jury evidently did not believe the evidence of appellant's witnesses, who swore that some of the persons in the automobile were drunk.

The rule of law announced in the case of *Sparks* v. *Chitwood Motor Co., supra,* is a correct statement of the law, but has no application in this case.

It is next contended by appellant that the court erred in refusing to declare a mistrial. The reason urged for a mistrial was because Mr. Partain, attorney for appellee, was permitted to ask the jurors whether any of them were stockholders or in the employ of a liability insurance company. The attorney had a right to ask this question, because he had the right to exercise certain peremptory challenges, and he would probably want to know whether any of them were connected with liability insurance companies.

In the case of *Pekin Stave Co.* v. *Ramey*, 104 Ark. 1, 147 S. W. 83, relied on by appellant, this court said: "If counsel for plaintiff honestly and in good faith thinks that any of the veniremen is in any way connected with a casualty company insuring the defendant against loss for the injury complained of in the case, he can ask the jurors on their *voir dire* relative to this."

Appellant then quotes from *Rambo* v. *Rambo*, 195 Ark. 832, 114 S. W. 2d 468, as follows: "It has often been held that in a personal injury case it is prejudicial error to permit counsel for plaintiff unnecessarily to advise the jury by questions or otherwise of the fact that defendant carries indemnity insurance."

The question involved here was not involved in the last case quoted from, but the court said in that case: "The next question is, whether the fact that appellant carried public liability insurance, authorized the maintenance of this action. In the first place, it may be said that the question of whether appellant had liability insurance had no proper place in this action, and the court should have granted appellant's motion to strike all mention of insurance held by him from the amendment to the complaint as well as to have excluded all proof regarding same offered in evidence."

The quotation copied by appellant was from a case decided before the statute was enacted requiring bus companies to carry liability insurance. The law now, § 2025 of Pope's Digest, requires companies of this character to carry liability insurance, and surely no one would claim that an attorney would not be permitted to ascertain whether any of the jurors were connected

with a liability insurance company, so that he might exercise his challenges.

Section 8343 of Pope's Digest provides that each party shall have three peremptory challenges, which may be made only orally. Jurors are required under the law, § 8312, Pope's Digest, to be of good character, of approved integrity, of sound judgment and reasonable information.

Appellant next contends that the court erred in refusing to dismiss the case on the grounds. of former adjudication, and relies on rule 41 of the Rules of Civil Procedure adopted by the Supreme Court of the United States pursuant to the act of June 19, 1934. In the first place it may be stated that the rule has no application. It does not declare that dismissals or non-suits, as were had in this case, are an adjudication on the merits, as contended for by appellant. Rule 41 may be found in Ohlinger's Federal Practice,. vol. 3, p. 526. Our statute provides for non-suits and this statute was construed in the case of *Sims* v. *Miller,* 151 Ark. 377, 236 S. W. 828, where this identical question was involved. There had been two non-suits in that case.

It is next contended that the court erred in permitting counsel for plaintiff to make improper argument to the jury. Without setting out the remarks of the attorneys for either side, it is sufficient to say that if there were any error committed by the appellee's attorney in his argument, it was invited by appellant. Nothing was said in the argument of appellee's attorney except to answer the statements made by the attorney for appellant.

No other questions are argued by appellant. We find no error, and the judgment is affirmed.