Acco Transportation Company *v.* Smith.

4-7322                                    178 S. W. 2d 1011

Opinion delivered April 3, 1944.

*Ben M. McCray, Ernest Briner, Fred A. Isgrig* and *Jno. S. Gatewood,* for appellant.

*Eugene Coffelt* and *Kenneth C. Coffelt;* for appellee.

McHANEY, J. Appellees, who are the son, the administratrix and the widow of Luther H. Smith, deceased, brought two separate actions against appellants, the truck owner and its driver, to recover damages for personal injuries to Jim W. Smith in one, and damages for the estate and for the widow for the death of Luther H. Smith, in the other. The cases were consolidated for trial and are briefed as one case here.

On July 1, 1943, Luther Smith and his son, Jim W. Smith, were riding in a wagon drawn by a mule traveling toward Benton, on highway No. 67, well on their own side of said highway, when they were overtaken by a heavily loaded truck and trailer, owned and operated by appellants, and undertaking to pass same, struck said wagon, totally wrecking same and severely injuring Jim W. Smith and fatally injuring Luther H. Smith, from which he died on the following day. The negligence alleged in each case was that said driver failed to keep a lookout, failed to slow his truck down or to stop it, and failed to drive said truck around said wagon. The answers were general denials and pleas of contributory negligence. Trial resulted in verdicts and judgments

as follows: For Jim W. Smith, $5,000; for the estate of Luther H. Smith, for conscious pain and suffering, $2,500; for the widow, $7,500. This appeal followed.

It is first argued for a reversal that the court erred in refusing to direct a verdict for appellants on their request so to do. We cannot agree. While there were no eyewitnesses to this tragedy, other than the driver of the truck and trailer, and one Kesterson who was six hundred yards away, there are several facts which are undisputed and other circumstances, from which negligence on the part of the driver of said truck might reasonably be inferred by the jury, if not from the testimony of Ross, the driver of the truck, himself. The accident occurred on highway 67, about a mile west of Benton, near a filling station, at about 7 p. m. of July 1, 1943. The Smiths, father and son, were riding in a one-horse wagon, to which was hitched an elderly mule. They were going home after a day's work in a field near by. They were traveling very slowly, on their right-hand side of the road, on a straight stretch, and it was daylight with the sun still shining at 7 p. m. Jim Smith, the survivor, testified he did not know the truck was coming, did not know of its presence, was thrown off the wagon and knocked unconscious for a short time and did not know how the accident occurred. There was no warning given of the approach of the truck. The wagon was hit from behind at a time it was on its own side of the road and skid tracks of the truck showed it was on the right-hand side of the road. All the harness on the mule was stripped off except the bridle and the mule was injured. Other witnesses testified to similar facts and circumstances showing the location of the skid marks, the destruction of the wagon and that the wagon was caught up under the right hind power wheels of the truck and carried with it as it left the road, crossed a ditch and went into a fence, as we understand it, on the right-hand side of the road going east toward Benton. Ross, the truck driver, said he had a load of 14,000 pounds of machinery on the trailer, going to Bauxite, was driving 25 or 30 miles per hour, and when he saw

the wagon he pulled over to the left side of the road to go around the wagon. Then, he said the mule "swayed" and he applied his brakes which caused his truck to go into the wagon. He said the mule had swayed to the left and was right over the black line in the center of the highway. "He acted like he got scared and like he was going to bring the wagon in front of me."

Whether the mule veered or swayed to the left, or continued to plod his weary way down his own side of the road was a question of fact in dispute, and the jury had the right to believe the witnesses for appellees and to reject that of the driver, Ross.

As said by this court in *Hines* v. *Betts,* 146 Ark. 555, 226 S. W. 165, to quote headnote 2: "In considering whether the court should have directed a verdict for the defendant, every fact and inference of fact favorable to the plaintiffs which the jury might believe to be true must be accepted as true, and every fact unfavorable to the plaintiffs which the jury might reject as untrue must be rejected."

There are many facts and circumstances from which the jury could infer negligence, such as the position of the tracks made by the truck, failure of the driver to signal his approach and desire to pass, applying his hydraulic brakes at a time when he was only 10 or 15 feet from the wagon, knowing it would cause the load to swerve to the right, failure to exercise due care to have his truck under such control as to pass the vehicle in front of him with the superior right-of-way without danger.

This case is comparable to that of *Ward* v. *Haralson,* 196 Ark. 785, 120 S. W. 2d 322, where we said: "This case is more nearly like that of *Madison-Smith Cadillac Co.* v. *Lloyd,* 184 Ark. 542, 43 S. W. 2d 729, where we held that 'the law of the road is that the automobile in front has the superior right to the use of the highway for the purpose of leaving it on either side to enter intersecting roads,' and that a driver in the rear who fails to observe such rule is guilty of contributory

negligence. While there is no question of turning off the highway into an intersecting road in the case at bar, we think the principle stated there applicable here with more force, since the truck was proceeding straight ahead on its own right side of the road, and the car in the rear must recognize the superior right of the truck to so proceed on its own way, and so manage his own car as to cause no injury under the penalty of being chargeable with negligence.''

So, here, the wagon was proceeding slowly down the road, perhaps at some three or four miles per hour, when the truck undertook to pass it going in the same direction at 25 to 30 miles per hour, or about ten times as fast as the wagon, and we think it was the duty of the driver to recognize the superior right of the wagon to so proceed on its way, and to so manage his truck as to cause no injury under the penalty of being chargeable with negligence. We, therefore, conclude that the court properly refused the request for a directed verdict.

Another argument is directed against the giving of instruction No. 1 in each case. This argument is based on the assumption that the evidence was insufficient to support the alleged negligence. Since we have found that there was sufficient evidence to take the case to the jury, this assignment necessarily fails.

It is finally argued that the judgments in both cases are grossly excessive. In the case of Jim Smith, he sustained injuries that were severe and painful, but we fail to find that such injuries are permanent or that they render him totally and permanently disabled. He was injured on July 1, 1943, was taken to the hospital where he remained about one week. He brought this suit on July 15, 1943, and the case was tried and judgment entered on September 27, 1943, trial having begun on the 25th. He admitted he had already recovered to such extent as to be able to engage in his usual business as a carpenter and had earned as such as much as $1 per hour for such work. Dr. Blakely said he had a fractured rib and that he might be kept from his work by his injuries for two months. Dr. Carruthers who examined him

thoroughly and made X-ray pictures found no broken bones. Under this state of the record we think a judgment in excess of $2,500 is grossly excessive.

As to the judgment of $2,500 for the administrator for conscious pain and suffering prior to the death of Luther Smith, we think there was some substantial evidence that decedent was conscious for a goodly portion of the time between injury and death. Dr. Blakely, describing his condition when brought to the hospital said: ". . . he was pretty well knocked out. I would say he was in a semi-conscious condition, groaning and expressions in his face were rather painful expressions and at times he seemed to try to say something, but he never did speak, but would groan. . . . I would say it was pain, judging from the groans and expressions on his face." Other witnesses, the nurse and Mrs. Smith, gave testimony indicative of consciousness. We think the evidence, although meager, sufficient to justify the jury in finding that he suffered consciously. No contention is made as to the amount of this recovery.

As to the judgment in favor of the widow for loss of contributions by the death of her husband in the sum of $7,500, we agree that this amount is excessive. Luther Smith was nearly 69 years of age and had a life expectancy of slightly less than nine years. He was a small tenant farmer and farm laborer. In 1942, he worked six acres on the Charley Couch place to cotton, corn and potatoes. In 1943, he worked about nine acres and did farm labor for Mr. Thomas at 40 cents per hour. While Jim Smith and his mother estimated his annual income at $2,000 per year, their testimony of the details of how he earned it is very unconvincing and unsatisfactory. The instruction on the measure of damages for the widow limited it to the contributions he would have made to her, but did not require them to be reduced to their present value. No objection was made to the instruction, but the jury may have been misled into giving a larger sum than warranted by the evidence. We think any judgment in excess of $5,000 would be grossly excessive.

If appellees will, within 15 days remit the amounts herein pointed out as excessive, the judgments will be affirmed for the net amounts. Otherwise, the judgments will be reversed, and the causes remanded for a new trial.