**John William COX, Plaintiff,**

v.

**Roy MADDUX et al., Defendants.**

**No. LR-65-C-184.**

United States District Court

E. D. Arkansas, W. D.

June 24, 1966.

Carl Langston, Little Rock, Ark., for Cox and Melton.

Frank Lady, Jonesboro, Ark., and Gannaway & Darrow, Little Rock, Ark., for Roy Maddux.

James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., for United States.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This personal injury-wrongful death action has been tried to the Court without a jury. This memorandum incorporates the Court's findings of fact and conclusions of law.

About eight o'clock in the morning of August 21, 1965, a pick-up truck, the property of the United States Navy, and being operated on Government business by Naval personnel, collided with an automobile owned and operated by Rev. Roy C. Maddux and in which his wife, Sylvia Douglas Maddux, was riding. As a result of the accident Mrs. Maddux received fatal injuries, and Mr. Maddux was also injured. Plaintiff, John William Cox, an enlisted man in the Navy who was riding in the truck, sustained severe personal injuries and James Darrell Melton, the driver of the truck was slightly injured. Both vehicles were damaged; indeed the Maddux car was substantially demolished.

The collision occurred at a point on Interstate Highway 40 just east of the Lakewood Overpass in the eastern outskirts of the City of North Little Rock, Pulaski County, Arkansas. At the point of the collision Interstate 40 is a divided highway with three lanes of traffic in each division. The two divisions are separated by a grass median strip; on each side of each division is a wide asphalt paved shoulder. The road is a high speed, access controlled highway; the speed limits at the scene of the accident were a minimum speed of 45 miles per hour and a maximum speed of 70 miles per hour.

The collision occurred in the northernmost traffic lane for eastbound traffic, and the Government truck struck the Maddux car from the rear. At the time of the collision the Government truck was being driven to Jonesboro. Mr. and Mrs. Maddux were returning to their home in Walnut Ridge following a visit with their daughter who lives in Texas.

The morning of August 21, 1965, was clear and bright; the highway and shoulders were dry, and in the vicinity of the accident the road was perfectly straight and visibility east and west was practically unlimited. However, for some reason the occupants of the truck did not observe the Maddux car until they were in such proximity to it that the collision could not be avoided. At the moment of impact the truck was going about 62 miles per hour.

Mr. and Mrs. Maddux were knocked unconscious, and Mrs. Maddux never regained consciousness. As a result of the trauma which he sustained Mr. Maddux has developed retrograde amnesia and is unable to remember the events leading up to the accident or to describe the accident itself. In view of that inability on his part and in view of the fact that the Naval personnel did not see the Maddux car until just before they hit it, together with the further fact that there were no other eye witnesses to the accident, the location and movements of the Maddux car prior to its ultimate perception by Melton are highly uncertain and sharply disputed matters.

The litigation was commenced in the Circuit Court of Pulaski County, Arkansas, as a suit by Cox against Maddux; in that action plaintiff alleged that the accident was proximately caused by the

negligence of Maddux; Maddux answered and denied liability. Maddux also filed a counterclaim against Cox and a third party complaint against Melton. In that pleading Maddux alleged that the accident was proximately caused by negligence on the part of Melton and Cox, and that the alleged negligence of the former was imputed to the latter.

When the pleading last mentioned was filed, the Government removed the case here as authorized by 28 U.S.C.A. § 2679(b)–(d). In due course an order was entered substituting the Government for Melton and Cox as a party adversary to Maddux. Thereafter, Maddux in his capacity as executor of his wife's estate filed an intervention seeking to recover damages on account of the death of his wife. Originally, he sought to recover both for the benefit of her estate and for the benefit of himself and the two adult children of Mrs. Maddux, namely, Dale Maddux and Mrs. Faye Gonzales.

After the case was removed, numerous pleadings were filed. It would serve no useful purpose to list or abstract all of those pleadings. The Court will content itself with setting out at this point the claims with which it is concerned; those claims are as follows:

1. The principal claim of Cox against Maddux.

2. The individual claim of Maddux against the Government, including the alternative claim of Maddux for contribution should he be held liable to Cox.

3. The claim of Maddux as executor of his wife's estate for damages for the benefit of himself and the two children, the claim for damages for the benefit of the estate of the deceased having been abandoned.

4. The claim of the Government against Maddux for damages to the Government truck.

5. The derivative claim of the Government for reimbursement for the medical and hospital expenses of Cox. 42 U.S.C.A. § 2651 et seq.

6. The alternative claim of the Government for contribution from Maddux individually should the Government be held liable to Maddux as executor of his wife's estate.

7. The claim of Melton against Maddux for damages which Melton claims to have sustained as a result of his injuries.

■■ With regard to blame for the accident, the Court finds ultimately from a preponderance of the evidence that the accident and the consequences thereof were proximately caused by the concurrent negligence of Melton and Maddux; the Court is unable to find that the one was more negligent than the other and considers that their negligent acts and omissions proximately contributing to the accident were of equal degree. The result of this ultimate finding is that Melton cannot recover herein against Maddux, and that Maddux individually cannot recover for his own injuries and damages or for his own benefit in the death action. See in this connection the Arkansas Comparative Negligence Statute, Ark.Stats., Ann., §§ 27–1730.1 and 27–1730.2. Nor can the Government recover anything on account of damages to the truck since the negligence of Melton is imputed to the Government.

As far as the negligence of Melton is concerned, it should be said first that at the commencement of the trial counsel for the Government conceded that Melton was at least in some degree negligent. The Court finds that such concession was properly made, and the Court finds from a preponderance of the evidence that Melton negligently failed to keep that lookout for other vehicles on the highway which the law requires.

■■ The lookout required is that which a person of ordinary prudence would have kept in the circumstances. One of the circumstances to be considered here is the speed of the Government truck. While that speed was not excessive and was well within the posted maximum speed limit, it was a high rate

of speed. A person who is driving a motor vehicle at 62 miles an hour down an open highway is not required to keep his eyes glued to the road ahead of him every second that the vehicle is in motion; he may properly use his mirrors to keep advised of traffic conditions behind and to the sides of him; indeed, the general duty to keep a lookout includes the duty to keep a reasonably prudent and adequate lookout to the rear. Nor is it necessarily negligent for a driver to glance aside momentarily to speak to a passenger or for some other purpose.

■ However, a driver operating his vehicle at the speed indicated must realize that he is going down the road at a rate of more than 88 feet per second, and the lookout which he must keep down the road in front of him must be commensurate with that speed. If he has occasion to glance away from the highway in front for any purpose, he must before doing so look far enough down the road and properly evaluate what he sees so that his glancing away will not result in injurious or fatal consequences. Melton either did not look far enough ahead or did not properly evaluate what was there to be seen; in either case he was negligent.

■ The principal difficulty which the Court has with this case is presented by the question of whether and to what extent Maddux was guilty of negligence which was a proximate cause of the accident. Maddux, of course, was required to exercise ordinary care for his own safety and for the safety of others on the highway. The precise nature of his duty in that respect would depend in part upon where he was and what he was doing immediately prior to the time that he was finally perceived by Melton almost at the instant of collision. Unfortunately, neither side has been able by evidence to enlighten the Court on those points.

The theory of Maddux, based largely on the opinion evidence of two members of the Arkansas State Police Department who investigated the wreck, is that he was proceeding slowly along the highway in an easterly direction and was about to turn out of the traffic lane and onto the left hand shoulder of the road when he was struck.

The Government contends, on the other hand, that Maddux had driven his car off the highway onto the shoulder and was returning or had returned to the highway when the collision occurred. In support of that theory counsel for the Government attempted to draw inferences, based on natural laws of physics, from the condition of the vehicles after the collision, from certain marks on the highway, and from the positions of the respective vehicles after they came to rest.

The Court doubts that the opinion evidence of the State policemen was admissible, but even if it was, the Court is not convinced by it; nor can the Court draw the inferences which counsel for the Government would have it draw. The Court thinks that it would be pure speculation to undertake to say just where the Maddux car was, or what it was doing, or at what angle it was headed prior to the time Melton observed it. The most that can be said is that the Maddux vehicle was in fact in the left hand traffic lane immediately adjacent to the shoulder when the impact occurred.

There is no satisfactory explanation in evidence as to why Maddux would be moving at low speed along the highway or why he would have had occasion to drive onto or stop on the shoulder. On an earlier trip from Little Rock to Walnut Ridge, Maddux had missed his turn from Interstate 40. It may be theorized that when he saw the Lakewood Overpass he suspected that he had again passed his proper exit, and that his subsequent conduct is explained by that fact. However, such a theory is entirely speculative and unacceptable.

■ Regardless of why Maddux was moving so slowly and regardless of exactly where he was and what he intended to do, he obviously knew that he was on an

arterial highway with posted minimum speeds as well as posted maximum speeds. Traffic on the highway was visible to him, as it was to other drivers; he had no right to ignore traffic behind him. Under Arkansas law it is negligence to drive more slowly than is reasonable and prudent just as it is negligence to drive at a speed greater than is reasonable and prudent; any person with common sense knows that it is dangerous to creep along a highway which is part of the federal Interstate Highway System. If Maddux wished to leave the traffic lane and drive onto the shoulder, there was no reason for him to reduce his speed unduly in order to do so safely; the shoulder was wide and it was paved.

If Maddux was proceeding down the highway and had never turned from it prior to the collision, he was negligent in failing to keep a proper lookout and in going too slow. If he had at one time driven onto the shoulder, then it was his duty before driving back onto the highway to keep a lookout for oncoming vehicles and to yield the right of way to any vehicle approaching so closely as to constitute an immediate hazard as the Government truck obviously was. If Maddux had been on the shoulder, he either negligently failed to look west along the highway before reentering the traffic lanes, or negligently failed to yield the right of way to the truck.

Coming now to the alleged negligence of Cox, the Court first rejects the claim of Maddux that the negligence of Melton was imputed to Cox. Such an imputation would have to be based either on the allegation of Maddux that Cox was the superior of Melton or upon the existence of a joint enterprise on the part of the two men.

It is in evidence that the rating of Yeoman 1/c held by Cox is a higher rating than that of Storekeeper 2/c held by Melton, but that in itself would not be sufficient to charge Cox with Melton's negligence. Melton was not in any sense the agent or servant of Cox; both men were on Government service. Although Cox deposed that if Melton was driving negligently, Cox had the authority to "order" him to return to due care, a failure on the part of Cox to exercise such authority would not have the effect of imputing to him the negligence of Melton, although it might conceivably be negligence on the part of Cox not to exercise such authority.

Actually, the Court is not persuaded that Cox had any authority over Melton. The duties of Yeomen and storekeepers in the Navy are entirely different; neither of these men held a petty officer's warrant; under applicable regulations Melton was charged with full responsibility with respect to the operation of the truck. Both men were under the command of a single commissioned officer stationed at Little Rock, and that officer had assigned Cox to go to Jonesboro as Melton's helper.

As to joint enterprise, the Court doubts that two Naval men proceeding in a Government vehicle on Government business can ever be said to be engaged on a joint enterprise as that concept exists in the law of Arkansas relating to the operation of motor vehicles. Under that law, before the driver of a motor vehicle and a passenger riding therein can be held to be engaged on a joint enterprise, it must appear not only that they had a common interest in the object and purpose of the mission on which the vehicle was being driven, but also that each had an equal right to share in the control of the operation of the vehicle. Bennett v. Gundolph, 238 Ark. 582, 383 S.W.2d 289; Woodard v. Holliday, 235 Ark. 744, 361 S.W.2d 744; Stockton v. Baker, 213 Ark. 918, 213 S.W.2d 896.

Both Melton and Cox had been ordered to go to Jonesboro to take a table to the Naval recruiting office there and to bring other furniture from that office back to Little Rock. Both men were bound to obey those orders, and in that sense it may be said that they had a common interest in the object of the

trip. But, they had no personal interest in their mission; it was not undertaken by them for their pleasure or profit; and in a legal sense their relationship was not a consensual one.

Aside from that, however, the Court is not convinced by a preponderance of the evidence that Cox had any right or authority to share in the control of the truck, and the absence of that element is fatal to any claim of joint enterprise.

The Court does not find from a preponderance of the evidence that Cox was guilty of any negligent act or omission. On this phase of the case the theory of Maddux is that the right side and rear view mirror on the truck was out of adjustment, and that Cox had been trying to adjust it immediately prior to the collision; that having completed his effort he requested Melton to see if the mirror was "OK," and thereby negligently induced Melton to take his eyes off the road. Melton and Cox deny that the latter had done anything with respect to the mirror after the vehicle had passed a highway junction a very considerable distance to the west of the scene of the collision. However, on at least two occasions, Melton admitted to the investigating officers that Cox had called his attention to the mirror, that Melton had glanced over at it, and that when he looked back, he was upon the Maddux car.

Melton's admissions to the officers were not binding on Cox, and Melton says that to the extent that he made them at all he did so while in a confused state of mind. Assuming that Cox was handling the mirror just before the accident, and that he did ask Melton to glance at it, and that the latter did so, the Court does not find that the conduct of Cox was in the circumstances negligent. As has been said, visibility along the highway was clear, and Melton was in as good position to keep a lookout as was Cox. Cox had a right to assume that Melton was looking where he was going and would not look away from the road

without ascertaining that he could do so safely.

From what has been said about the status and conduct of Cox it follows that he is entitled to recover against Maddux individually. Cox was painfully and seriously injured with his injuries requiring substantial hospitalization and surgery, which were supplied at Government expense. The surgery involved removal of a section of Cox's intestines; it was also necessary to remove from his tongue one of his teeth which had been broken off and imbedded in the tongue. Cox still suffers pain and weakness from his injuries and surgery, but there is no evidence that he is laboring under any permanent disability or impaired earning capacity resulting from his injuries. From its consideration of the evidence the Court finds that the sum of $8,500 will fairly and reasonably compensate Cox for his injuries, and that sum will be awarded.

The claim of the Government for reimbursement for expenses incurred in connection with the treatment and cure of Cox, unlike the Government's claim for damages to the truck, is a derivative claim, and the Government's right to recover on account of those expenses is not affected by the negligence of Melton, and such recovery will be allowed.

As has been indicated, the negligence of Maddux proximately contributing to the accident defeats not only his claim for his own personal injuries and property damage but also any claim of his to compensation on account of the death of his wife.

However, the two children of Mr. and Mrs. Maddux are entitled to compensation for mental anguish resulting from her death. The evidence discloses that the Maddux family was closely knit, and that the members thereof had a great deal of affection for each other. The Court finds that both the son and the daughter have sustained and for a time at least will continue to sustain mental anguish on account of the loss

of their mother. But, Mrs. Maddux was not a young woman when she died. Both of the children are married and have families. Both had moved away from home prior to the accident. Mr. Dale Maddux did not appear at the trial. Mrs. Gonzales was present and testified, and there was other testimony as to the reality and extent of the grief of the children occasioned by the death of their mother. The Court was certainly not unimpressed by that testimony; however, it seems to the Court that at least part of the grief and anguish which the children have sustained has been due to their distress over the fact that their father has been left a widower in the later years of his life.

In the circumstances here present the Court can not justify a large award on account of the mental anguish of the children. It is the finding of the Court that $8,000 is a reasonable and adequate award for such anguish; that sum will be awarded, and the Court finds that it should be apportioned as follows: Dale Maddux, $4,000; Mrs. Gonzales, $4,000.

The final matters to be considered are the respective claims of Mr. Maddux and of the Government for contribution. Arkansas recognizes the right of contribution among tortfeasors as is evidenced by its adoption of the Uniform Contribution Among Joint Tortfeasors Act in 1941. Act 315 of 1941, Ark.Stats., Ann., § 34–1001 et seq.

Section 1 of that Act, Ark.Stats., Ann., § 34–1001, defines "joint tortfeasors" as being "two or more persons jointly and severally liable in tort for the same injury to person or property whether or not judgment has been recovered against all or some of them." And Section 2 of the Act, Ark.Stats., Ann., § 34–1002, declares that the right of contribution among tortfeasors exists.

In view of the statutory definition of "joint tortfeasors" it is clear that before there can be any contribution it must appear that at least originally the person seeking contribution and the person from whom contribution is sought must have been under a common legal liability to the injured party. Thus, there can be no contribution where the injured party had no cause of action originally against the party sought to be charged. 18 Am.Jur.2d, Contribution, §§ 47 and 49; Applegate v. Rigall, 229 Ark. 773, 318 S.W.2d 596; C. & L. Rural Electric Co-op Corporation v. Kincaid, 221 Ark. 450, 256 S.W.2d 337; cf. Schott v. Colonial Baking Co., W.D. Ark., 111 F.Supp. 13.

Taking up first the contribution claim of Maddux, the Court has found that Cox was injured as a result of the joint and concurrent negligence of Maddux and Melton. Laying to one side for a moment the involvement of the Government in this case, Cox clearly had a cause of action originally against Maddux and Melton. The only argument that could be advanced against a claim prosecuted by Cox against the two parties last mentioned would have been that Cox was a guest rider and was barred from recovery by the Arkansas guest rider statute, Ark.Stats., Ann., § 75–913 et seq. However, such an argument would not have been successful since Cox was not in any sense a "guest" of Melton; they were both servants of a common master and were riding in the truck at the direction of their superior officer. Cf. Whittecar v. Cheatham, 226 Ark. 31, 287 S.W.2d 578, holding that a member of a high school basketball team who was injured while riding in the coach's car on the return trip from a game was not to be considered as a "guest" of the coach where the injured boy was making the trip at the direction of the coach.

However, the involvement of the Government in the case cannot be ignored because under the provisions of 28 U.S. C.A. § 2679(b) the remedy against the Government in a case of this kind is exclusive. That is to say, in view of the statutory provision just mentioned Cox had no remedy against Melton. Hence, the right of Maddux to contribution depends upon whether the joint and concurrent negligence of Maddux and

526

Melton gave Cox a right of action against both Maddux and the Government.

 It is well settled by now that the remedy provided by the Federal Tort Claims Act does not extend to a service man injured as a result of negligence on the part of another service man when the injury occurs while both are on duty and the injury arises out of or is incident to their service activity. United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139; Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200; Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152; United States v. United Services Automobile Association, 8 Cir., 238 F.2d 364. In United Air Lines, Inc. v. Wiener, 9 Cir., 335 F.2d 379, the facts were that passengers, including two service men, riding on a commercial aircraft were killed as a result of the concurring negligence of the crew of the airliner and of the crew of a United States Air Force jet fighter plane. In the litigation which followed the collision United contended, among other things, that it was entitled to indemnity from the Government with respect to the two service men. It was held on the strength of *Feres*, supra, that indemnity could not be allowed because the service men had no cause of action against the Government. (335 F.2d at 404.)

The relevancy of the authorities just cited to this case is apparent. Here, both Melton and Cox were Naval personnel; they were both on duty, and the accident was due in part to the negligence of Melton in the performance of that duty. While Cox may have been entitled to certain pecuniary benefits from the Government on account of his injuries, he had no cause of action under the Tort Claims Act.

The Maddux claim for contribution must be rejected.

The Government's claim for contribution from Maddux individually with respect to the Government's liability for the death of Mrs. Maddux will be rejected likewise. Before the Government would be entitled to the contribution which it seeks it must appear that both it and Maddux had a common liability on account of the death of Mrs. Maddux. Mr. and Mrs. Maddux were returning to Walnut Ridge after having visited their daughter in Texas; they were riding in his car, and he was driving. The status of Mrs. Maddux would appear to have been that of a guest in her husband's car; there is nothing to indicate that Mr. Maddux was driving in such a manner that the guest statute would be inapplicable to any claim which Mrs. Maddux might have advanced against him. Therefore, Mr. Maddux had no liability to the personal representative of Mrs. Maddux, and the Government is not entitled to contribution from him. Cf. Troutman v. Modlin, 8 Cir., 353 F.2d 382.

A judgment in accordance with the foregoing will be entered.