The **TRAVELERS INSURANCE COMPANY and Branden–Aermotor Corporation, Successor of Aermotor, Inc., Appellants,**

v.

The **UNITED STATES of America.**

**No. 73–1510.**

United States Court of Appeals, Third Circuit.

Argued Nov. 9, 1973.

Decided March 18, 1974.

Victor L. Drexel, and James T. Giles, Pepper, Hamilton & Sheetz, Philadelphia, Pa., for appellants.

Robert E. J. Curran, U. S. Atty., Richard R. Galli, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before VAN DUSEN, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

The issue presented by this appeal is whether the exclusive remedy provision of the Federal Employees' Compensation Act (hereinafter "FECA"), 5 U.S.C. § 8116(c), bars the claim of a third party for indemnity or contribution against the Federal Government for damages paid an injured Government employee. Plaintiffs-appellants, Travelers Insurance Company (hereinafter "Travelers") and Branden-Aermotor Corporation, successor of Aermotor Inc. (hereinafter "Aermotor"), appeal from a district court order dismissing their complaint seeking indemnity or contribution from the defendant-appellee, United States, under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671 et seq.

This case arises as a result of an accident on September 16, 1962, in which Jake Arnold, an employee of the Coast and Geodetic Survey, an instrumentality of the Federal Government, fell 77 feet from a tower while in the course of his employment. Arnold sustained serious injuries which eventually caused his death. Thereafter, on April 8, 1964, Patricia Arnold, his wife and executrix of his estate, filed a wrongful death and survival action against Aermotor in the United States District Court for the Eastern District of Pennsylvania (Civil No. 35481). The theory of the law suit was that the decedent's injuries and subsequent death were the result of unsafe design and lack of safety measures in the tower, which was manufactured by Aermotor. On March 7, 1968, after a lengthy trial, the jury returned a verdict in the amount of $125,000. in favor of

Arnold's estate, and Travelers, insurer of Aermotor, paid the amount of the verdict plus interest, costs of defense, and expenses, pursuant to its contract of insurance.

Subsequently, on March 18, 1969, Travelers and Aermotor filed a complaint in the District Court for the Eastern District of Pennsylvania (Civil No. 69–859) seeking indemnity or, alternatively, contribution from the United States. The basis of recovery alleged in the complaint was that the United States was exclusively responsible for the design, assembly, inspection, possession, and control of the tower from which Arnold fell. After both parties filed motions for summary judgment, the late Chief Judge John W. Lord, Jr. granted plaintiffs' motion for summary judgment on August 26, 1971. In his opinion granting the motion, Chief Judge Lord stated that "this case presents a classic example for indemnification"[1] but he failed to set out a specific monetary award.

The case was subsequently reassigned to the late Judge Body, and on January 10, 1973, plaintiffs filed a motion for assessment of damages and counsel fees, pursuant to the August 26, 1971, order granting summary judgment for indemnification. On April 5, 1973, Judge Body entered a Memorandum and Order reversing the August 26, 1971, order, denying plaintiffs' motion for assessment of damages and counsel fees, and dismissing the complaint.[2] The basis of this decision reversing the prior district court order was that, since the Federal Tort Claims Act, 28 U.S.C. § 2674 (1970), provides that the Government has the same status as a private individual under like circumstances, the Government should be treated as a Pennsylvania employer, and, in accordance with the applicable Pennsylvania law, as recently stated by this court in United States v. O'Neill, 450 F.2d 1012 (3d Cir.

1971), the Government need not pay damages in excess of its workmen's compensation liability. The district judge declined to assess damages to the extent of the Government's workmen's compensation liability. The plaintiffs have appealed from this order dismissing their complaint.

### I.

■ Plaintiffs' first contention is that the district court, in dismissing their complaint, erred in holding that the instant case was controlled by the recent decision of this court in United States v. O'Neill, *supra*. We agree. In *O'Neill*, this court considered a claim by the United States against a Pennsylvania employer for indemnification of damages paid by the United States to an injured employee of the Pennsylvania employer. The employer asserted as a defense that its liability under the Pennsylvania Workmen's Compensation Act, 77 P.S. §§ 1–1066, was exclusive of all other liability, direct or indirect. Considering both the purpose and policy of the statute and prior decisions of the state courts, we held that a Pennsylvania employer could not be liable for damages in excess of its workmen's compensation liability. *O'Neill* thus involved construction of a state workmen's compensation statute and is not determinative of the extent of a third party's rights to contribution or indemnity under the FECA. Determining the extent of the Federal Government's liability to third persons under the FECA is a matter which requires interpretation of a federally created immunity, if any, rather than a state created immunity, and as such it should be resolved as a matter of federal law. See Newport Air Park, Inc. v. United States, 419 F.2d 342, 346–347 (1st Cir. 1969). While examination of analogous practices under state workmen's compensation schemes,

---

1. See Travelers Insurance Co. v. United States, 331 F.Supp. 189, 192 (E.D.Pa.1971).

2. See Travelers Insurance Co. v. United States, Memorandum and Order of April 5, 1973, 331 F.Supp. 189 (Civil No. 69–859, E. D.Pa., Document No. 20).

such as that of Pennsylvania,[3] may be instructive in resolving this issue, the determination nevertheless remains a matter of federal law.

## II.

We now consider the issue whether the exclusive remedy provision of the FECA, 5 U.S.C. § 8116(c),[4] bars the plaintiffs' claim for contribution or indemnity against the Federal Government for the damages paid the injured Government employee, Arnold.

The effect of the exclusive remedy provision upon the rights of third parties was analyzed in depth by the Supreme Court in Weyerhaeuser S. S. Co. v. United States, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963). *Weyerhaeuser* arose out of a collision between a dredge owned by the United States and a ship owned by Weyerhaeuser Steamship Company. A government employee who was injured in the collision sued the shipowner and recovered a $16,000. settlement. When it was subsequently determined that both vessels had been at fault, the shipowner included the amount of the settlement in the damages to be divided under the traditional admiralty rule of "divided damages."

The United States, relying on that part of the exclusivity provision which states that recovery under the FECA "to the employee, his legal representative, spouse, and anyone otherwise entitled to recover damages from the United States" shall be exclusive, contended that the shipowner fell within the above language and was, therefore, precluded from recovering any part of the settlement. After initially determining that the language in question was ambiguous, the Supreme Court examined the legislative history of the FECA in an effort to discern Congress' purpose in enacting this section. The Court concluded:

> "The purpose of § 7(b), added in 1949, was to establish that, as between the Government on the one hand and its employees and their representatives or dependents on the other, the statutory remedy was to be exclusive. There is no evidence whatever that Congress was concerned with the rights of unrelated third parties, much less any purpose to disturb settled doctrines of admiralty law affecting the mutual rights and liabilities of private shipowners in collision cases."

See 372 U.S. at 601, 83 S.Ct. at 929. The Court then held that the exclusivity provision did not limit the admiralty rule of divided damages and that the shipowner was entitled to recover from the United States one-half of the damages paid the injured Government employee.

In *Weyerhaeuser,* the Supreme Court made specific reference to its earlier decision in Ryan Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133 (1956), in which it had considered section 5 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905, an exclusive remedy provision "nearly identical" at that time

---

3. We note appellants' argument that, unlike the FECA, the Pennsylvania Workmen's Compensation Act provides for a voluntary system and that the employer and employee can elect to be excluded from participating under its terms. 77 P.S. §§ 431 and 461.

4. 5 U.S.C. § 8116(c) provides as follows:
   "(c) The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel."

to § 16(c), then § 7(b), of the FECA.[5] In *Ryan,* the Court had held that, despite the exclusive liability provision, a shipowner was entitled to reimbursement from a longshoreman's employer for damages recovered against the shipowner by the longshoreman injured by the employer's negligence. The Court's decision in *Ryan* was based upon the existence of a contractual relationship between the shipowner and the employer, which the Court found formed the basis of an implied promise of indemnification.[6] The Court in *Weyerhaeuser,* referring to *Ryan,* stated that:

"In the present case, there was no contractual relationship between the United States and the petitioner, governing their correlative rights and duties [but] [t]here is involved here, instead, a rule of admiralty law which, for more than 100 years, has governed with at least equal clarity the correlative rights and duties of two shipowners whose vessels have been involved in a collision in which both were at fault."

372 U.S. at 603, 83 S.Ct. at 930.

Shortly after deciding *Weyerhaeuser,* the Court issued an order in Treadwell Construction Co. v. United States, 372 U.S. 772, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963), vacating the judgment of this court in Drake v. Treadwell Construction Co., 299 F.2d 789 (3d Cir. 1962), and remanding for further consideration in light of *Weyerhaeuser.* In *Treadwell,* this court had held, in a situation where there was no contractual or other independent relationship between a third-party joint tortfeasor and the Government, that the exclusivity provision precluded a claim for contribution against the Government by a joint tortfeasor who had been successfully sued by an injured Government employee. See 299 F.2d at 790–792.

Federal courts are in hopeless conflict concerning the proper interpretation of the *Weyerhaeuser* and *Treadwell* decisions, *supra.* The principal source of this conflict is the broad language in *Weyerhaeuser,* 372 U.S. at 601, 83 S.Ct. at 1861, that "there is no evidence that Congress was concerned with the rights of unrelated third parties."

A few federal courts have interpreted the above language broadly and have held that the exclusive remedy provision does not preclude recovery of contribution or indemnity from the United States by a third party sued by an injured Government employee. See Wallenius Bremen G.m.b.H. v. United States, 409 F.2d 994 (4th Cir. 1969), cert. denied, 398 U.S. 958, 90 S.Ct. 2164,

---

5. At the time *Ryan* and *Weyerhaeuser* were decided, 33 U.S.C. § 905 provided, in relevant part, as follows:

"The liability of an employer . . . shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . . ."

33 U.S.C. § 905 was recently amended by Congress. See 33 U.S.C. § 905(b). See also H.R.Rep.No. 1441, 92d Cong., 2d Sess. (1972), *quoted at,* U.S.Code Congressional and Administrative News, p. 4698 (1972). See note 6 infra.

6. See 350 U.S. at 133–134, 76 S.Ct. at 232. The Court expressly did not decide the issue whether the exclusivity provision precluded recovery on the theory of noncontractual, or tort, indemnity, as opposed to implied contractual indemnity. *Id.* at 132–133. Several courts, including this one, had previously decided that the exclusivity provision did preclude contribution or tort indemnity, but not implied or express contractual indemnity. See Crawford v. Pope and Talbot, 206 F.2d 784 (3d Cir. 1953) ; American Mutual Liability Ins. Co. v. Matthews, 182 F.2d 322 (2d Cir. 1951).

The *Ryan* doctrine has recently been abrogated by Congress in an amendment to 33 U.S.C. § 905. See 33 U.S.C. § 905(b). In the legislative history Congress makes clear that the recent amendment to § 905 is intended to prohibit recovery of indemnity by a third party against a statutorily covered employer under any theory, whether based on an implied or express warranty or tort principles. See H.R.Rep.No. 1441, 92d Cong., 2d Sess. (1972), *quoted at,* U.S.Code Congressional and Administrative News, pp. 4698, 4704 (1972).

26 L.Ed.2d 542 (1970); Hart v. Simons, 223 F.Supp. 109 (E.D.Pa.1963). In *Wallenius, supra,* the Fourth Circuit reasoned that the exclusivity provision was not directed at unrelated third parties, but at potential plaintiffs who had such a personal or dependent relationship with the injured Government employee that they benefited from the remedy under the FECA. The court also concluded, on the basis of the vacation and remand of this court's decision in *Treadwell, supra,* that the Supreme Court intended that other types of third-party rights, as well as the admiralty rule of divided damages, were to be undisturbed by the FECA. Finally, criticizing the approach of the many federal courts which have denied contribution or indemnity on the ground that the United States had no underlying tort liability,[7] the Fourth Circuit stated that the fact that there is no underlying liability should not preclude an action for indemnity since

> "if the purpose of indemnity is to relieve the relatively innocent wrongdoer and shift the burden to one whose conduct is more blameworthy, the fact that the latter has a personal defense if sued by the injured person would seem to be irrelevant."

409 F.2d at 998.[8]

Most federal courts which have considered the issue have taken a contrary approach and, limiting *Weyerhaeuser* to its facts, have held that, since the United States has no underlying tort liability to its injured employee, the exclusivity provision of the FECA precludes a third party action for contribution or indemnity unless there exists a relationship between the third party and the United States independent of the tortious event, such as the contractual obligation in

*Ryan, supra,* or the admiralty rule of divided damages in *Weyerhaeuser, supra,* upon which recovery can be grounded. See, *e. g.,* Newport Air Park, Inc. v. United States, 419 F.2d 342 (1st Cir. 1969); Murray v. United States, 132 U.S.App.D.C. 91, 405 F.2d 1361 (1968); Maddux v. Cox, 382 F.2d 119 (8th Cir. 1967); Wien Alaska Airlines, Inc. v. United States, 375 F.2d 736 (9th Cir.), cert. denied, 389 U.S. 940, 88 S.Ct. 288, 19 L.Ed.2d 291 (1967); United Airlines v. Weiner, 335 F.2d 379 (9th Cir.), cert. denied sub nom., United Airlines v. United States, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); Busey v. Washington, 225 F.Supp. 416 (D.D.C. 1964). These courts have generally distinguished between contribution and tort indemnity on the one hand and contractual indemnity on the other, and have held that § 16(c) of the FECA precludes an action for contribution or tort indemnity since the United States has no underlying tort liability, but that it does not preclude an action for implied contractual indemnity arising from a contractual relationship between the parties.

In United Airlines v. Weiner, *supra,* which involved a mid-air collision between a military aircraft and a commercial airplane resulting in the death of seven nonmilitary Government employees, the Ninth Circuit held that the private airline was not entitled to tort indemnity from the United States for wrongful death damages paid to the survivors of the Government employees because there was no underlying tort liability of the Government to its injured employees:

> "On the other hand, neither contribution nor indemnity may be awarded without the support of liability on the

---

7. See, *e. g.,* Newport Air Park, Inc. v. United States, 419 F.2d 342 (1st Cir. 1969); United Airlines v. Weiner, 335 F.2d 379 (9th Cir.), cert. denied sub nom. United Airlines v. United States, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964).

8. One commentator has criticized this language in *Wallenius,* stating that "[t]his dic-

tum is open to criticism—the court gave little authority for such a complete break in the traditional rule on tort indemnity." See Dombrink, The Right to Collect Contribution or Indemnity from the United States When a Federal Employee or Serviceman is Injured, 27 JAG J. 69, 81 (1972).

part of the indemnitor to the person injured. The courts have consistently held that in the absence of an express or implied contract of indemnity, or in the absence of the indemnitor's liability to the injured party, there can be no recovery for indemnity . . . ." 335 F.2d at 403. The Court stated further that:

"United's claim for indemnity is not based upon a duty owed by the government to United by virtue of a contract, attenuated or otherwise, or by operation of a rule of law such as the divided damage rule of admiralty. There being no underlying liability on the part of the government, United's claim for indemnity must fall."

*Id.* at 404.

Numerous federal courts have expressly relied on the principles enunciated in *Weiner* in denying a third party's claim for contribution or tort indemnity from the United States for damages paid an injured Government employee. See *e. g.*, Newport Air Park, Inc. v. United States, *supra*, at 347; Maddux v. Cox, *supra* at 124.

We agree with the approach of the Ninth Circuit in *Weiner* and the majority of other federal cases which have considered the issue that § 16(c) of the FECA precludes an action for contribution or tort indemnity but not an action for implied or express contractual indemnity. This approach is consistent with the principles established in prior decisions of this court which considered the effect of the exclusive remedy provision of the Longshoremen's and Harbor Workers' Compensation Act (before its amendment in 1972) upon a third party's right to indemnity or contribution from a statutorily covered employer. See Brown v. American-Hawaiian S. S. Co., 211 F.2d 16 (3d Cir. 1954); Crawford v. Pope & Talbot, 206 F.2d 784 (3d Cir. 1953).[9] We therefore hold that the plaintiffs in the instant case are not entitled to recover contribution or noncontractual tort indemnity from the United States for the damages suffered by the injured Government employee and his family.[10]

We remand the case to the district court, however, for consideration of whether plaintiffs have a right of action

---

**9.** The holding of these cases that a third party may maintain an action for express or implied contractual indemnity, as opposed to an action for contribution or tort indemnity (see 206 F.2d at 792; 211 F.2d at 18) under the Longshoremen's Act, has recently been abrogated by an amendment to the Act. See 33 U.S.C. § 905(b); notes 6 and 7, *supra*. However, these cases were expressly relied upon by the Ninth Circuit in *Weiner*, 335 F.2d at 403, and their principles continue to retain vitality for purposes of analyzing the effect of the exclusive remedy provision of the FECA.

**10.** We recognize that this holding is not in accord with the apparent view of the August 1971 district court opinion in this case, which relied on *Wallenius*, *supra*. See 331 F.Supp. at 191–93. We note that it was conceded at oral argument that both counsel had agreed to withdrawal of the defendant's appeal from the August 1971 district court order, apparently because of lack of an appealable order. See letter from plaintiffs' counsel dated 1/20/72 attached to appellee's brief. Under these circumstances, the 1971 district court opinion and order are not

binding on grounds of res judicata and collateral estoppel. See Restatement of Judgments § 41 (1942), which provides:

"The rules of res judicata are not applicable where the judgment is not a final judgment."

In Comment a, this language is used:

"A judgment that the plaintiff recover an amount of damages to be assessed later, by the jury or by the court, is not a final judgment.

.        .        .        .        .

"In many States an appeal can be taken only after the rendition of a final judgment. Ordinarily the requirement of finality of judgment as a basis for appellate proceedings is the same as that of finality as a basis for the application of the rules of res judicata."

See also Restatement of Judgments § 69 (1942). Furthermore, by reason of the exceptional circumstances presented by this record, the laws of the case doctrine did not preclude the district court from entering an order on April 5, 1973, in variance with the earlier district court opinion and order of August 1971. *See* TCF Film Corp. v. Gourley, 240 F.2d 711, 714 (3d Cir. 1957).

under the theory of implied contractual indemnity. Plaintiffs alleged in their complaint that (1) the type of tower (called a "Bilby tower") from which the injured Government employee fell was "designed in approximately 1926 by . . . an employee of the United States, acting within the course and scope of his employment, under the exclusive direction and control of the Coast and Geodetic Survey;" (2) such design was "approved by the Director of the Coast and Geodetic Survey;" (3) the towers were "manufactured by Aermotor for the Coast and Geodetic Survey pursuant to contracts obtained through Government bidding processes and were built strictly in accordance with the design and specifications furnished and required by the United States;" and (4) "Aermotor did not, without explicit directions from the United States, make changes in the design or construction of the Towers supplied to the Coast and Geodetic Survey."[11] Defendant United States denied these allegations in its answer, except that it admitted that "[f]rom approximately 1930, the Towers were manufactured by Aermotor for the Coast and Geodetic Survey pursuant to contracts obtained through Government bidding processes." Evidence consistent with these allegations might show contractual responsibility of the defendant so that there would be a basis for recovery under an implied contractual right to indemnification.

On remand, the district court should also consider, as a preliminary matter, whether it properly has jurisdiction over the plaintiffs' claim for contractual indemnity. At least one court has held that such a claim is barred by the provision of the Tucker Act, 28 U.S.C. § 1346(a)(2), which limits the jurisdiction of the district courts to claims "not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States." See

Murray v. United States, 132 U.S.App. D.C. 91, 405 F.2d 1361, 1367 (1968). This issue was discussed, but not decided, by this court in Drake v. Treadwell Construction Co., 299 F.2d 789, 791–792 (3d Cir. 1962). Since this issue was not briefed or raised by the parties to this appeal, this issue should be resolved by the district court.

The judgment of the district court will be reversed and the case will be remanded to the district court for proceedings consistent with this opinion.